UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| ANDREW J. CARPENTER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:21-cv-00190-TWP-KMB |
| ) | |
| TAYLOR MCELFRESH, Corporal, Jail Staff, ) | |
| RONALD HAYES, Captain, Jail Staff, ) | |
| EUGENIA CAMPBELL, Lieutenant, Jail Staff, ) | |
| TYRONE GREEN, Officer, Jail Staff, ) | |
| ) | |
| Defendants. ) | |

**ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

This matter is before the Court on Motion for Summary Judgment filed by Defendants Taylor McElfresh ("Corporal McElfresh"), Ronald Hayes ("Captain Hayes"), Eugenia Campbell ("Lt. Campbell"), and Tyrone Green ("Officer Green") (collectively, "the Defendants"). (Dkt. 33.) Plaintiff Andrew J. Carpenter ("Mr. Carpenter"), an inmate at the Jennings County Jail ("the Jail") initiated this lawsuit pursuant to 42 U.S.C. § 1983 alleging Eighth Amendment excessive force and failure to protect claims against the Defendants. (Dkt. 8.) Defendants argue they are entitled to judgment as a matter of law because Mr. Carpenter failed to exhaust his available administrative remedies as required by the Prison Litigation Reform Act ("PLRA") before filing this lawsuit. For the reasons stated below, the Motion is **denied**.

**I. LEGAL STANDARD**

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A motion for summary judgment asks the court to find that there is no genuine dispute as to any material fact and, instead, that the movant is entitled to judgment

as a matter of law. *See* Fed. R. Civ. P. 56(a). "Material facts are those that might affect the outcome of the suit under applicable substantive law." *Dawson v. Brown,* 803 F.3d 829, 833 (7th Cir. 2015) (internal quotation omitted). Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(B).

The moving party is entitled to summary judgment if no reasonable factfinder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009). The court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Skiba v. Ill. Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018). In deciding summary judgment, the court "may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts." *Runkel v. City of Springfield*, 51 F.4th 736, 741 (7th Cir. 2022) (cleaned up).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). "[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id*. at 325.

## II. BACKGROUND

The following facts are not necessarily objectively true, but as required by Federal Rule of Civil Procedure 56, the facts are presented in the light most favorable to Mr. Carpenter as the non-moving party. *See Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

### A. The Incident

Mr. Carpenter was booked into the Jail on September 10, 2021, on multiple charges. On September 15, 2021, while being held in the suicide cell at the Jail, Captain Hayes, Officer Green, Corporal McElfresh, and Lt. Campbell entered Mr. Carpenter's cell because Mr. Carpenter "was kicking the door and wouldn't stop." (Dkt. 1 at 4.) Mr. Carpenter was naked in the cell. Corporal McElfresh approached him with a taser and Mr. Carpenter knocked the taser out of Corporal McElfresh's hand and grabbed him in a bear hug "so he couldn't hit me and hurt me." *Id*. Several officers wrestled Mr. Carpenter to the ground. During the struggle, Mr. Carpenter struck Corporal McElfresh in the head and bit Officer Green. *Id*. After Mr. Carpenter was subdued, Corporal McElfresh drive-stunned[1] him in the heart with a Taser for at least 10 seconds. *Id*. at 5. Also after he was subdued, Corporal McElfresh retrieved his weapon and placed the Taser directly on Mr. Carpenter's "bare skin on [his] heart for 10 seconds or more, while Capt. R. Hayes held and half la[i]d on [Mr. Carpenter]." *Id*.

Mr. Carpenter faced disciplinary sanctions and criminal charges for his actions. On December 21, 2021, Mr. Carpenter filed this case alleging that the Defendants' actions violate the Eighth Amendment of the United States Constitution, as well as Article 1, Sections 14, 15, and 16

---

[1] "Drive stunning" is the process of using the Electro Muscular Disruption weapon as a pain compliance technique. This is done by activating the Taser and placing it against an individual's body. This can be done without an air cartridge in place or after an air cartridge has been deployed.

3

of the Indiana Constitution. But because Mr. Carpenter was a pretrial detainee on the date of the incident, following screening, the Court determined that his claims shall proceed under the Fourteenth Amendment of the United States Constitution. (Dkt. 8 at 2.)

**B.     Inmate Grievance Process**

The Jail distributes a "Basic Inmate Information" document to new inmates which includes information about filing grievances. (Dkt. 35-1 at 3, 9–13.) In particular, the document states:

> 16.     Grievance & Disciplinary process: You are encouraged to resolve your problems in the least formal manner. Talk first with correctional staff. If you feel you cannot resolve your problem ask to speak to the shift supervisor. If the shift supervisor feels it necessary he/she will then refer the matter to the Jail Commander. Grievance forms are available thru the kiosk.

*Id.* at 12.

Jail Commander Steven Frey ("Commander Frey") avers that the rules permit inmates to submit written grievances. *Id.* at 3. Separate and apart from the grievance procedure, inmates "may make general inquiries through request forms that are available at the kiosk." *Id.* According to Commander Frey, "If an inmate makes a request or reports a problem to Jail staff members that cannot be resolved informally, inmates must complete a request or grievance form via the kiosk." *Id.* "If an inmate cannot complete the form via the kiosk … Jail staff will help the inmate prepare a paper request or grievance." *Id.* Commander Frey affirms that, "[t]his standard practice of submitting written requests and grievances when a request or problem cannot be resolved informally is communicated to inmates by Jail staff members and allows the Jail to keep a record of grievances and requests." *Id.* at 3-4.

**C.     Mr. Carpenter's Attempts to Exhaust**

It is undisputed that Mr. Carpenter received a copy of the Jail's Basic Information document. *See id.* at 15. Mr. Carpenter filed multiple grievances about incidents unrelated to

those in his Complaint during his time at the Jail. (Dkt. 35-1 at 4.) Commander Frey contends however, that Mr. Carpenter never filed a written grievance or a written request about the incidents at issue in this lawsuit. *Id.* at 4. Mr. Carpenter never complained to him (Commander Frey) about the incidents at issue in this case. *Id.* Defendants have submitted affidavits from multiple other Jail staff members, all of whom state that Mr. Carpenter never complained to them about incidents at issue in this case. (Dkts. 35-2, 35-4.) Mr. Carpenter spoke to Sergeant Brandon Smith[2] ("Sergeant Smith") about the September 15, 2021 incident. (Dkt. 35-5 at 3.) At the time, Sergeant Smith was a night shift sergeant and shift supervisor at the Jail. *Id.* at 1. When Mr. Carpenter told him about the incident, Sergeant Smith

> reminded Mr. Carpenter of the Jail's grievance process and that the Basic Inmate Information sheet contained a copy of the process, explained the grievance process to him, and instructed him—per the Jail's standard practice—to complete a request form via the Jail's electronic kiosk should he have a question about the incident or submit a grievance form via the Jail's electronic kiosk should he want to report a problem about the incident.

*Id.* at 3.

Mr. Carpenter tried to talk to Defendants Hayes, Campbell, and McElfresh about the incidents at issue in this lawsuit. (Dkt. 40 at 3.) He agrees "that he spoke to Captain Smith on September 15, 2021, about the "attack on [him] by the defendants," but his account differs from Sergeant Smith's. *Id.* Mr. Carpenter chose to speak to Sergeant Smith because Defendants Campbell and Hayes were involved in the attack on him. *Id.* Mr. Carpenter asked Captain Smith to talk to Commander Frey about the issue but Captain Smith "never followed 'Chain of Command'

---

[2] Sergeant Smith is now a captain, but he was a sergeant at the time of the events at issue in this case, and Mr. Carpenter refers to him as "Sergeant Smith," so the Court also refers to him as Sergeant Smith in this Order.

5

as outlined in the Jennings County Jail[']s 'Basic Information' sheet. Instead, he told me that there's nothing he could do and that was it." *Id*. Mr. Carpenter,

> believed that Sgt. Smith would follow procedure and talk to Jail Commander Steve Frey, but he never did and at that point I honestly felt that my only choice was to file my complaint with the District Court, because Sgt. Smith stopped the process and broke the chain of command by 'not' going to his superiors with my complaint.

*Id.* at 4.

### III.  DISCUSSION

Defendants seek summary judgment and argue that Mr. Carpenter failed to exhaust his available administrative remedies as required by the PLRA. The PLRA requires that a prisoner exhaust his available administrative remedies before bringing suit concerning prison conditions under 42 U.S.C. § 1983 "or any other federal law." 42 U.S.C. § 1997e(a); *see Porter v. Nussle*, 534 U.S. 516, 524–25 (2002). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id.* at 532 (citation omitted). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo,* 548 U.S. 81, 90–91 (2006) (footnote omitted); *see also Dole v. Chandler,* 438 F.3d 804, 809 (7th Cir. 2006) ("'To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require.'") (quoting *Pozo v. McCaughtry,* 286 F.3d 1022, 1025 (7th Cir. 2002)). Thus, "to exhaust administrative remedies, a prisoner must take all steps prescribed by the prison's grievance system." *Ford v. Johnson*, 362 F.3d 395, 397 (7th Cir. 2004).

Defendants argue that Mr. Carpenter failed to exhaust his available administrative remedies because he: (1) never complained to Jail staff members that Defendants used excessive force or

6

failed to protect him on September 15, 2021; and (2) never filed a written grievance about the incidents at issue in this case. (Dkt. 34 at 12.) Mr. Carpenter responds that he did everything he needed to do under the policy when he spoke to Sergeant Smith.

The Court agrees that Defendants have failed to carry their burden to show that Mr. Carpenter failed to exhaust his administrative remedies. Defendants argue that Mr. Carpenter never spoke to Jail staff about the incidents at issue in this lawsuit, but it is undisputed that he talked to Sergeant Smith about the incidents. Defendants fail to explain why talking to Sergeant Smith does not count as talking to "correctional staff" about the incidents, as required by the policy. (Dkt. 35-1 at 12.) Regardless, Mr. Carpenter also has stated under penalty of perjury that he tried to talk to Defendants Hayes, Campbell, and McElfresh about the incidents and that he ultimately talked to Sergeant Smith because Defendants were involved in the attack on him. Defendants fail to explain why this does not meet the requirements of the grievance policy, which states, "If you feel you cannot resolve your problem ask to speak to the shift supervisor." (Dkt. 35-1 at 12.)[3]

That leaves Defendants' second argument: that Mr. Carpenter never filed a written grievance. They are correct that the undisputed record evidence shows that Mr. Carpenter never filed a formal grievance about the incidents at issue in this case. But—on its face—the Jail's grievance policy did not require him to do so. The policy's mere statement that "[g]rievance forms are available thru the kiosk," (Dkt. 35-1 at 12), is not a requirement that an inmate actually file such a grievance. To the contrary, the policy seems to contemplate a scenario identical to what

---

[3] In their reply, Defendants argue, "In fact, Plaintiff does not testify he even complained about use of force to Sergeant Smith or reported a problem to Sergeant Smith about the September 15, 2021, incident." (Dkt. 43 at 10.) Defendants did not argue in their initial summary judgment brief that Mr. Carpenter failed to complete the shift supervisor step of the Jail's grievance process. *See generally* Dkt. 33. They raised it for the first time in their Reply, thereby waiving it. Regardless, Mr. Carpenter's summary judgment affidavit states that he talked to Sergeant Smith about "the attack on me by the defendants and the due process violations that happened on September 15, 2021 in which defendants violated my constitutional rights and used [e]xcessive [f]orce on me in the[ir] (4) four person attack." (Dkt. 40 at 3.) Construing his *pro se* affidavit liberally, this statement constitutes testimony that he complained to Sergeant Smith about the September 15, 2021, incident.

7

happened in this case—the inmate speaks to the shift supervisor, who decides not to speak to the Jail Commander, thereby effectively ending the grievance process. *Id.*

Even if the reference to grievance forms being available could be read as a requirement that inmates actually use those forms, the policy is ambiguous in that it can also be read not to require the use of the forms, but merely suggest their use. Any ambiguity must be resolved in Mr. Carpenter's favor. As the Seventh Circuit recently explained in reversing a district court's grant of summary judgment on the issue of exhaustion:

> If at this point there is any ambiguity remaining, we resolve it in [the plaintiff's] favor for multiple reasons. First, an official must show beyond dispute that remedies were available before the court should dismiss on the basis of the affirmative defense. Ambiguous policy language is not beyond dispute by definition, and so resolving interpretative ambiguity against the official goes hand in hand with our practice of placing the broader burden of proof with the official.
>
> Second, and as the Supreme Court has remarked, the exhaustion requirement creates an incentive for prisoners to make full use of whatever administrative process a prison chooses to create. This helps managers monitor officer-prisoner relations and resolve complaints quickly, and also reduces inefficient uses of the federal courts. But vague or confusing grievance provisions open to multiple interpretations can sow distrust among prisoners and undercut these benefits. Administrators have broad leeway to tailor grievance rules to their institutions. If it wishes to do so, [the prison] is free to amend [the grievance policy] to strike a different balance between grievable and non-grievable issues. But whatever the rules may be, they must be written clearly if the grievance system is to function predictably and meaningfully.

*Miles v. Anton*, 42 F.4th 777, 781–82 (7th Cir. 2022) (internal quotation marks and citations omitted).

In pressing for summary judgment, Defendants emphasize that Mr. Carpenter filed multiple grievances about other issues. (Dkt. 34 at 11.) If the grievance process actually required Mr. Carpenter to file a written grievance, that argument might show that the process was not too opaque to be considered "available" to him. *See, e.g.*, *Figgs v. Geo Grp., Inc.*, No. 1:18-cv-89-MPB-TWP, 2019 WL 7584297, at *7 (S.D. Ind. Dec. 12, 2019) (rejecting plaintiffs' argument that the grievance

8

procedure was so "opaque" as to be incapable of use where the evidence showed that they routinely used the process for other issues). But the fact that Mr. Carpenter filed other grievances does not mean that the policy actually required him to do so.

Defendants also contend that the Jail's grievance policy required inmates to file a written grievance. (Dkt. 43 at 7.) But the written policy contains no such language. It appears that Defendants are equating the written policy with their verbal additions to it, as set forth in Commander Frey's affidavit. *See id.* (citing Dkt. 35-1 at 3–4). To support this line of argument, they note that the Seventh Circuit has said that the grievance rules governing an exhaustion motion may include "both written policies and informal, unwritten practices and procedures." *Id.* at 6 (citing *Crouch v. Brown*, 27 F.4th 1315, 1321 (7th Cir. 2022); *Curtis v. Timberlake*, 436 F.3d 709, 710–12). The Seventh Circuit has recognized that an inmate who failed to comply with the written terms of a grievance policy may still show that he exhausted administrative remedies by showing that he complied with informal, unwritten exhaustion procedures. *See, e.g.*, *Curtis v. Timberlake*, 436 F.3d 709, 712 (7th Cir. 2005) (reversing grant of summary judgment on exhaustion grounds and finding disputed question of material fact where plaintiff did not comply with written grievance requirement to place grievance in designated lockbox but presented evidence that, in practice, social worker would accept hand-delivered grievances). But Defendants do not point the Court to any cases holding the converse, which is the argument they press here—namely, that, even if an inmate complies with the terms of a written grievance procedure, he will have nonetheless failed to have exhaust if he failed to *also* comply with unwritten procedures that arguably contradict the written policy. Such a rule would run contrary to the principle that *custodians* bear the burden of establishing clear and non-confusing grievance procedures.

Ultimately, Defendants bear the burden to prove that Mr. Carpenter failed to exhaust his administrative remedies before filing suit. They have not proven that Mr. Carpenter failed to follow the Jail's required grievance procedure, and their summary judgment motion must be **denied**.

## IV. FEDERAL OF CIVIL PROCEDURE 56(f)(1) NOTICE

Although Mr. Carpenter did not file a cross-motion for summary judgment, Rule 56 provides that the Court may, independent of the motion, issue such a ruling.

> After giving notice and a reasonable time to respond, the court may:
>
> (1) grant summary judgment for a nonmovant;
> (2) grant the motion on grounds not raised by a party; or
> (3) consider summary judgment on its own after identifying for the parties
> material facts that may not be genuinely in dispute.

Federal of Civil Procedure 56(f)(1). The record before the Court shows that Mr. Carpenter followed all the steps required by the Jail's grievance policy. Thus, the record shows that Mr. Carpenter is entitled to summary judgment on Defendants' affirmative defense of exhaustion pursuant to Rule 56(f)(1). The Court gives Defendants notice of its intent to grant summary judgment in Mr. Carpenter's favor on this issue. Defendants have **up to and including Thursday, March 2, 2023**, in which to respond to the Court's Notice. Alternatively, they may withdraw their affirmative defenses of exhaustion by that date.

## IV.   CONCLUSION

For the reasons explained above, Defendants' Motion for Summary Judgment, Dkt. [33], is **DENIED**. The Court has given Defendants Notice of its intent to grant summary judgment in Mr. Carpenter's favor. Defendants have **up to and including Thursday, March 2, 2023**, in which to respond to the Court's proposal to file a response or withdraw their exhaustion defense.

**SO ORDERED.**

Date: 2/6/2023

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Andrew J. Carpenter
JENNINGS COUNTY JAIL
925 S. State Street
North Vernon, Indiana  47265

Kenneth Jude Kleppel
KIGHTLINGER & GRAY, LLP
kkleppel@k-glaw.com